Our first case is William Moore v. Secretary of Veterans Affairs, 2023-1867. Mr. Dohakis. Yes, Your Honor. Thank you. May it please the Court. Kenny Dohakis for appellant. On behalf of Mr. Moore, I want to thank this Court for the opportunity to present his appeal. Here we have the Veterans Court decision which affirmed the Boar's decision but did so contrary to law. There are two issues presented with similar errors. The Veterans Court mistakenly affirmed the Board's determination that prior Board decisions had adjudicated issues that, as a matter of law, it could not have. And the Veterans Court also engaged in prohibited first instance fact-finding. I'd like to start with the TDIU matter. What this boils down to is that the Board determined that the TDIU rating is moot because Mr. Moore is already receiving, currently, SNC ratings which were higher than the TDIU. I'm sorry, I'm confused. We're talking about here the 2013 Board decision? The decision I just referenced, Your Honor, is the decision on appeal, the 2021 decision. And there the Board determined that TDIU is moot because Mr. Moore is currently receiving more than a total rating. But the Veterans Court affirmed because it determined that the 2013 decision had implicitly denied TDIU when it disposed of the PTSD rating. In 2013, they were reviewing the 2001 R.O. decision, is that right? I believe either the 2001 or 2006 because there's a couple of... Well, it makes a difference. Which is it? Well, the PTSD, it should be the 2001, Your Honor. And although there was a later 2006 adjudication that, as per our argument, it's not necessarily relevant to what this Court is dealing with the issue. But it had revised a prior 1968 claim on the basis of Q, which is partly, is one of the main thrust of our argument for why an earlier effective date is available. However, while an appeal was pending for Mr. Moore's PTSD rating, Mr. Moore filed a TDIU application. The VA at that time told him, we are not going to make a decision on this. So they didn't issue a decision. But more importantly, the Board's decision that's before this Court... The 2001 decision didn't address TDIU, is that correct? It did not, Your Honor. Right. And neither did the 2006. In March of 2006... Well, it's questionable it's the 2006 decision, but I'm not understanding what the 2006 decision has to do with what's before us now. That wasn't appealed either in 2013 in the 2013 Board decision or the 2015 Board decision, right? Well, it was, Your Honor, because what happened was, in 2001, the evidence raised an entitlement to a TDIU. Then later, the VA issued a decision... I'm sorry, you're confusing me. Because you said that the 2001 decision was before the Board in 2013, which was... It was, Your Honor. Was remanded and then came back in 2015. Yes, Your Honor. I'm not understanding what the 2006 decision has to do with this. The reason why that's pertinent is because it was the only mention of TDIU ever until this Board's decision issued in 2021. And all that the VA ever said was, we're not going to adjudicate it. That's the reason that we bring it up. And that's why it's important because without a decision, it could never have been before the Board, which goes to the merits of what the Veterans Court found... But the 2006 decision, according to you, wasn't before the Board anyway. Correct, Your Honor. Okay, so the question is how they handled the 2001 decision. I'm sorry, Your Honor, say that again. The question is how they handled the 2001 decision. Correct, Your Honor. Yes. And it was never mentioned there. But the reason, and I think it's important, I want to emphasize why the 2006 decision is important. Because with implicit regular rating, disposition of the scheduler cannot also normally, under the general rule that the Secretary cited in his briefing under Locklear, there is a general rule that most of the time when you're given a rating less than total, then it's reasonable that most folks would be put on notice that the TDIU reason was addressed. But Locklear specifically, and the facts of this case support also, that when the VA separates them, and here they did it by saying we're not going to issue a decision on TDIU, then when it gets to the Board, the Board couldn't have addressed it because it was never denied, granted anything, there was no SOC, there was no substantive appeal, so it was still pending at the VA. And that's why the 2006 AOJ decision is important. What if we disagree with your view of the 2006 letter as somehow bifurcating TDIU for the VA to decide at some other day? What does that do to your case? I don't think it does anything, Your Honor, because again, there is no statement of the case. A lot of your argument, in your briefing at least, seems to be premised on the idea that there was bifurcation, and because there was bifurcation, then therefore the TDIU remains pending and still alive and has never been resolved. So it seems like that theory, at least to the extent it's tied to the idea that there was some kind of bifurcation act in 2006, that at least would go away, right? If the Court disagrees, Your Honor, that there was no bifurcation, then it's relevant only to the extent that that's our underlying merits argument that the Veterans Court never addressed. The error that the Veterans Court made here, which is before this Court, is it affirmed in violation of Chenery on a basis that the Board didn't. The Board said, your TDIU is moot because you are currently receiving a higher rating than TDIU. The Veterans Court said, we affirm because it was implicitly denied in 2013. And implicit denial, as we talked about in our brief, is fact-heavy. None of these facts were developed by the Board. 7261C... Well, when we go back to the 2013 Board decision and specifically look at what Mr. Moore said during the 2012 hearing before the Board, he said he is satisfied with a 70% rating. And so he doesn't care about that. The only thing he cares about now is an effective filing date, right? He did say that, yes, Your Honor. That does feel like he, you know, he is, I suppose, the master of his claim and appeal, is abandoning anything related to the rating side of his claim. And he's focused purely on trying to get an earlier effective date. He was, Your Honor, but two points to that. One is, again, the TDIU was not before the Board because there was never a statement of the case. There was never a substantive appeal. So regardless of what he communicated, the Board could not have addressed TDIU. There was never a decision. And the RO, again, in 2006 told him, we will not adjudicate TDIU. They didn't say we're denying it. Was this whole TDIU and possible increased rating through TDIU basically severed from the claim stream as soon as he said, the only thing I need and care about is an earlier effective date? No, Your Honor, because again, he can't ask the Board to do something they have no legal authority to do. And if the Board had understood it to say that, then the proper remedy under the statute and regulations would have been to refer that to the RO to deal with it in either a statement of the case or some other notice. Well, I thought that's what the Board did in 2013. It remanded the effective date question back to the RO. But it never had jurisdiction, Your Honor, over the TDIU rating issue because it was bifurcated. Again, assuming the Court agrees that that happened. If it didn't, suppose it didn't happen, do you lose? Perhaps. But again, the error that the Veterans Court made is it went to, it affirmed on grounds different than what the Board made. And the Board said it's moot because you are currently receiving more than 100%. The Veterans Court affirmed because it was implicitly denied in 2013. That was never subject to a decision by the ALJ, by the Board. Mr. Moore, the first time he gets this notice that there was an implicit denial determination is at the Veterans Court. And his only option at that point is to appeal to this Court, which can't review facts. And so from a due process and just a statutory imperative, he has to be told at some point so that he can challenge those findings. What's the fact issue? The fact issue is the implicit denial, the entire analysis, Your Honor. What was the claim that was adjudicated? What was communicated to him? Whether it was sufficient notice under this Court's, and I found Steele, which was issued a couple weeks ago, which reaffirmed the implicit denial, and talks about in Cogburn and some of the other cases in Adams, where there's a lot of fact finding, or at least there's some facts to law, as to whether or not a specific notice gives sufficient information to the claimant that he can be deemed by law to have been on notice that that claim was also denied. None of that happened until the Veterans Court made that determination. And now we're here, which again, this Court cannot review facts at all. So he will never get a chance to challenge those fact findings before any tribunal, which is not how the system's set up, and is contrary to the jurisdiction of the Board and the Court. So what the Veterans Court is saying, as I understand it, is that under Comber and Roberson, the appeal from the 2001 decision, both in 2013 and in 2015, necessarily included a claim for TDIU, because it had a substantive claim to PTSD, correct? Yes, Your Honor. And that because under Comber and Roberson, that issue was necessarily implicitly before the Board, that there's an implicit denial, and therefore... Yes, Your Honor. Your client should have appealed, say the 2013 decision, to the Veterans Court at that point saying, you implicitly denied my TDIU claim, and that was error. Yes, Your Honor. That's what the Veterans Court ruled, but again, the implicit denial aspect of that ruling has never been subject to any review, ever, until now. And Mr. Moore is entitled by statute to at least get a decision from the Board, although we would argue that the AOJ, because of the one review on appeal under 7104A, he should be able to get a de novo review of those findings of fact, but at least from the Board so that he can challenge them at the Court. And right now, these fact findings made by the Veterans Court are unreviewable because of this Court's limited jurisdiction. And so what we're asking for is, if that's what the Veterans Court thinks, if that's what the Secretary thinks, then the Secretary needs to make those findings of fact in the first instance, and then give him an opportunity to challenge them under some form, as opposed to now where they're unreviewable. But I would just highlight, Your Honor, as you said, and the Secretary has never disputed this in any of his filings, TDIU was raised as part of that appeal that was adjudicated initially, remanded in 2013 and 2015. The appeal from 2001. From 2001, yes, Your Honor. And so far, the only mention of it in any document is the 2006 letter that says, we're not going to address it. And so I'm into my rebuttal time, so if there are no other questions, I'll preserve the rest of my argument for then. We will hold it. Mr. Jordan. May it please the Court. This Court should affirm the decision of the Veterans Court because it did not err in affirming the Board's determination that any TDIU claim was new. Mr. Moore attacks the Veterans Court findings on multiple grounds, each of which fail. First, I'd like to point out that this issue of whether or not the Board determined that the Board decision in 2013 severed any previous claim was explicitly found by the 2021 Board, and that was acknowledged by the Veterans Court in its 2023 decision. I'd also like to mention that we're talking about this 2000... Wait a second. You're saying the 2021 Board decision explicitly rejected the TDIU claim? It acknowledged that the PTSD issue was resolved in 2013, and that there was a new claim stream beginning in 2018. Well, what did it expressly say as to TDIU? I believe the 2021 Board's decision is... At 123. Yes, correct. Appendix page 123. And what it talks about is the PTSD rating. Right. It dismissed the issue of increased rating for PTSD, quote unquote. Is that enough to necessarily also dismiss the issue of TDIU? It is, because TDIU, at least as I understand it, is what's currently being argued for, is purely TDIU based off of PTSD, which in this case does not really make that much sense, because he already got TDIU in 1997, and got a combined 100% scheduler rating in 1998, with an effective date of 1992. And so my understanding is that there's some sort of theory that TDIU can be used to increase the 70% to 100%, which again doesn't make sense, because the veteran himself at the... This is at the appendix page 69 through 72, where at the Board, he's saying, I am happy with a 70%. 70% for PTSD totally resolves the issue of TDIU, which is another way to get an effective 100% without having the scheduler rating of that. And so that issue was resolved. The Locklear case and the Ingram case are... A 70% rating, that makes you potentially eligible for TDIU. Is that right? So under the scheduler rules, I think it gets there under that scheduler rule, but as applied here, it does not apply, because he already has a 100% rating. But his argument is not that he's entitled to TDIU, but that it affects his monthly compensation, right? My understanding is that he's arguing there was some other TDIU claim. I don't know... No, no, but in terms of the practical result, he's saying that the special monthly compensation would be increased if he had TDIU. That's the argument. The fact that he had a 100% rating doesn't make TDIU irrelevant. It just means that TDIU is indirectly relevant because it increases the special monthly compensation, right? I don't know exactly what he was articulating. If that's what he's articulating, I think the fact that the board found that this issue was finally resolved by the PTSD decision in 2013, which said this is 70%, it wasn't appealed, there's no Q, there's no appeal, and there was also a waiver. It seems kind of odd that something was implicitly denied, which wasn't specifically argued to the board. But the idea is that it was inherent under Comer and Roberson, right? That's your theory. My understanding is that there were filings earlier in the 2000s regarding TDIU... No, no, no, just answer my question. Isn't that your theory? It was implicitly before the board under Roberson and Comer, right? Correct, in 2013, given what he had filed in the early 2000s, which culminated in the 2011 BARA decision. Are you familiar with our decision in DeShettle? That does not come to mind at this moment. It seems to be relevant here. So what occurred here is the... And from what I understand, Mr. Dohaken is to be arguing, is that... Just so I understand, are you saying that whenever the VA denies a claim for an increased rating for a service-connected injury, it necessarily, implicitly, is also denying a TDIU claim without saying so? So I think there's an issue of bifurcation here. I'm just talking in the abstract, not about the facts of this case. I don't know categorically... The answer is yes, right? That's what you're arguing. You're arguing because they addressed the PTSD rating, that they necessarily addressed TDIU, and it was implicit denial of TDIU, and therefore he loses. He should have appealed to the Veterans Court, right? In this case, correct. Categorically, TDIU can encompass multiple disabilities, and that's what happened in the late 90s, where you can have three different conditions. Yeah, but we're just talking about one focused condition. And a veteran, a claimant, is seeking an increased rating for that one condition. Say he's trying to go from 70 to 80, and then it gets denied. Nobody says one word about TDIU. As a categorical legal matter, has the VA also necessarily denied any TDIU claim for that condition? In this case, yes, because it's one condition, there's no bifurcation. I mean, I know we have case law from this court that says that when someone, a veteran, makes a claim for an increased rating, or the highest possible rating, implicit in that is a claim for TDIU as well. And so, therefore, the VA needs to consider the possibility of TDIU. And I guess what I'm wondering is, is the converse necessarily true? That when a claim for an increased rating gets denied, but nobody says anything about TDIU, is it always true that implicit in that denial for an increased rating for that particular condition is also a denial for TDIU for that particular condition? If it's, just to make sure I understand, if TDIU is denied, is there an... No, if an increased rating claim for a particular condition is denied. TDIU is never discussed. And TDIU is never mentioned. As a matter of law, has the VA also necessarily, you know, inherently, implicitly denied any TDIU for that particular condition? It has under this... Which case says that when it comes to denials? So I think the Locklear and Ingram cases at the Veterans Court are... Right, I'm talking about right here, the Federal Circuit. Your best case is the shuttle, which you don't know about. The cases that I'm familiar with at the Veterans Court, and there may be other cases that I'm not recalling, right here on the stand, but I would think that those cases for the Veterans Court, the extent they've been affirmed or acknowledged by other precedent would certainly bear a note. When I asked your opposing counsel about possible abandonment of anything related to a rating, including a TDIU rating, when Mr. Moore, during the 2012 board hearing, said the only thing he cares about going forward is an effective filing date. That's earlier than what he had been awarded. I heard your opposing counsel say, well, at that point, no, there was no jurisdiction for the board to even entertain that possible attempted abandonment. Do you have a response to that? I don't quite understand the argument because there was a 2015 board decision where the effective date was adjudicated and that became final. And so the TDIU, which concerns trying to get a higher rating, was finally resolved in 2013. And so that effective date issue was later resolved in 2015 and there's been no Q claim since. I would also mention his PTSD was diagnosed in 1995, and then he later got a 100% scheduler rating. So I don't practically understand what that does in terms of an effective date. And so I think the board and the RO acknowledged that this does largely seem academic here. And I understand Mr. DeHaka is saying, if the idea that the TDIU based on PTSD was not implicitly denied and there's no issue there, then there's a Chenery issue. But I don't see that being implicated either. Because essentially what the board in 2021 said was, we have two claim streams, one from 2018, which is what is currently before us, and then this other claim stream, which was litigating the 2000s culminating in a 2011 RO with a 2013 and 2015 board decision, that's been final. And those facts, those findings were acknowledged by the Veterans Court and they found on that basis. The other thing is that... The problem is this, that you're talking about something being implicitly denied, which was never explicitly raised. That seems odd. And I'm not sure that Comer and Roberson get you there. Well, to the extent it was raised, and if he did not raise it, then there's the question of whether or not it's been raised by dint of the... To the extent there was a pending TDIU issue, it was resolved in 2013. And so I think the procedural history of this case is quite complex. But to the extent there was a live TDIU claim, the 2013 board decision, which said your 70% is what it is, he was fine with it, that ended it. And so that was a basis for finding a new claim stream, for finding that the issue of PTSD-related TDIU was totally resolved by 2021. And that's what the Veterans Court said in its 2023 decision. It also mentioned waiver, because in his briefing before the Veterans Court, he said in 2011, TDIU was moot. I think it's on page 147, if I recall correctly, of the appendix. So there's an acknowledgment it's moot. And so they, in the Veterans Court in 2023, said, okay, based off of this finding from the board, based off of this waiver or concession in our briefing, we affirm the mootness grounds. Now it did not, as in detail, talk about the sort of lack of a real monetary impact as much as the board did with respect to whether or not his 100% scheduler rating made this whole TDIU issue academic. But it did rely on facts found before the board. And it did rely on that waiver. So it was a tenory issue. And given the fact that there was, this was finally resolved in 2013, the board committed no error. I'm happy to answer any other questions the court may have. Thank you, counsel. Are you familiar with the show? I am, Your Honor. And I think that DeShuttle is distinguishable primarily because the issue in DeShuttle was service connection for two separate psychiatric disorders. And when one was denied, the other is implicitly denied. But here, we're not- Even though there was no explicit argument about the other one. Correct, Your Honor. And I think that that makes sense because from the veteran's perspective, he has psychiatric symptoms. He has psychiatric impairments. And the VA is telling him, none of those are related to your service. And I think that a reasonable person can be pretty well informed that they've denied any kind of benefits for those psychiatric disorders. This is different. This is the VA telling the veteran, we're not going to adjudicate this. And then the board, without mentioning it, implicitly denying it. And now the government's standing up here asking this court to rule that the board in 2021 can implicitly find that the 2013 decision implicitly denied a TDIU rating. And there's just too much implicit going on here. And Mr. Moore is left without any kind of remedy, any kind of opportunity to challenge these facts. PTSD and the TDIU are different. Here's what the board said in 2021. The veteran was awarded TDIU in 1997 with an effective date of 97. That was for a combination of disabilities. Subsequently, they talked about his current ratings where he's currently receiving SMC. Therefore, the issues concerning a TDIU are moot. It does not relate back to, it does not say a prior claim was distinguished because it was implicitly denied. It says, today, you are more than 100%. And so even if we were to address a TDIU rating, it wouldn't matter. To Judge Chen's point, I think that you're exactly right, Your Honor. Comer and Roberson stand for the proposition that TDIU can be reasonably raised. And if it were to be implicitly denied, then none of those cases would have come out the way that they did. Those cases are solid case law. They've been reaffirmed over and over and over. When it's raised, the VA has to address it. And a decision on something else does not, as a matter of law, always... Comer and Roberson say that it's implicitly raised when you raise the underlying rating. And it's not a separate claim. And so the idea is that there's an implicit denial, even though it's not explicitly raised because it's inherently part of the other claim. That's the theory, right? That is, Your Honor. And it goes on to say that the VA owes a determination on that issue, on that rating issue. And if it was always implicitly denied, then Comer wouldn't exist in the way that it does. Comer, in particular, says that when you raise the issue, the VA has to issue a decision on it. And here, again, the only communication that mentions TDIU is, we are not going to address it, ever. And I am over my time. So unless there are any questions... Oh, well, the only other thing that I was going to say, Your Honor, is that to the mootness issue, I'm sorry, to 2011, post-2011, that cannot extend prior to that. And the reason that this all matters is because if he were to get a TDIU for PTSD alone, from 1996 to 2005, he would go from 100 to SNCS, which is about $200 a month for those 9 to 10 years. And so it really does matter. It doesn't matter as far as TDIU is concerned, just it matters that it's a special month. Exactly, Your Honor. Thank you, counsel. The case is submitted.